STIEBEL et al. v. LISSBERGER.　(No. 6799.)

(Supreme Court, Appellate Division, First Department.　February 19, 1915.)

1. GAMING (§§ 11, 12*)—SPECULATIONS—STOCKS FOR FUTURE DELIVERY.
　　Where a customer's transaction with a stockbroker was not a bona fide transaction, but merely a cover for a bet upon the future price of a certain stock, made in the broker's presence and with his knowledge, and where the broker, without notice to the customer, purchased stocks which the customer ordered to be sold, and sold stock which he ordered to be bought, the transactions created no liability on the part of the customer.
　　[Ed. Note.—For other cases, see Gaming, Cent. Dig. §§ 19–23, 26; Dec. Dig. §§ 11, 12.*]

2. BILLS AND NOTES (§ 103*)—FRAUD IN ORIGINAL TRANSACTION—EFFECT.
　　Where an account stated is successfully impeached for fraud, notes given in consideration of the account furnish no better basis for their recovery than does the account itself.
　　[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 233–240; Dec. Dig. § 103.*]

3. PAYMENT (§ 86*)—VOLUNTARY PAYMENT—RECOVERY.
　　A customer, who gave his notes to his stockbroker and paid thereon in reliance upon the accuracy of a general account, which was in fact fraudulent, was entitled to recover back the amounts paid, since the payment could not be considered as voluntary.
　　[Ed. Note.—For other cases, see Payment, Cent. Dig. § 282; Dec. Dig. § 86.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date. & Rep'r Indexes

**4. ACCOUNT STATED (§ 12\*)—RESTATEMENT—PLEADING AND ISSUES.**

Where an account stated was impeached for fraud in the transactions forming part of the account, the referee, in an action on the account, properly declined to restate the account, eliminating the objectionable items, since the rule that in equity actions to surcharge or falsify an account the court will state the true account is not obligatory in an action at law, in which the debtor merely defends against liability, as that would be to render judgment upon an issue not tendered by the pleadings.

[Ed. Note.—For other cases, see Account Stated, Cent. Dig. §§ 73–76; Dec. Dig. § 12.\*]

**5. BROKERS (§ 38\*)—STOCKBROKERS—ACTION FOR CONVERSION—MEASURE OF DAMAGES.**

A customer, electing to disavow his broker's acts in himself selling or buying on orders to buy or sell, and tendering the amount which would have been due the broker for purchasing and carrying stocks to the day of tender, with a demand for delivery, which was refused, and claiming a conversion, was entitled to the difference between their market prices at the date of the alleged sale and the market price on the date of tender.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 31–36; Dec. Dig. § 38.\*]

**6. BROKERS (§ 31\*)—STOCKBROKERS—PURCHASE OF CUSTOMER'S STOCK—EFFECT.**

A broker's purchase of the stocks of his customer renders the transaction void, and does not change the relation of the parties, and the securities are still held under the original titles, the transaction is treated precisely as if no sale had been made, and the customer, to obtain another sale of the securities or to redeem them need not prove that the broker made a fraudulent sale, or one disadvantageous to himself, but only that he became the purchaser, putting him in the position of a trustee for him, though the customer has the option to treat the sale as valid and to accept the benefits thereof.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 24; Dec. Dig. § 31.\*]

Ingraham, P. J., dissenting.

Appeal from Judgment Entered on Report of Referee; Wilbur Larremore, Referee.

Action by Samuel J. Stiebel and others against Edmund Lissberger. Judgment for defendant, and plaintiffs appeal. Affirmed.

See, also, 150 N. Y. Supp. 1113.

Argued before INGRAHAM, P. J., and LAUGHLIN, SCOTT, DOWLING, and HOTCHKISS, JJ.

Austen G. Fox, of New York City, for appellants.

Nathaniel A. Elsberg, of New York City, for respondent.

SCOTT, J. This controversy is between a firm of stockbrokers and a customer. Defendant was a speculator in stocks, and plaintiffs acted as his brokers for a period of about 13 months, during which time he had about 100 transactions, resulting, according to the accounts kept by plaintiffs, in a considerable loss. Defendant received from plaintiffs the usual memoranda or slips showing each transaction, and also received at the end of each month an account showing the transactions for the month. These he accepted as veracious accounts of his transactions, and on April 1, 1907, when his relations with plaintiffs had terminated, they made a statement of the general

account, which he accepted. This statement showed a balance against him of $14,910.15, for which he gave a series of notes, on which he subsequently paid $4,090. He then refused to pay further, and the present action is commenced. It is found by the referee, and is undoubtedly the fact, that defendant accepted plaintiffs' statement of the account as accurate, and, because he so believed it, gave the notes.

The action was originally brought upon the unpaid notes alone, and the answer set up as defenses that some of the transactions had been mere gambling ones, and also that plaintiffs had agreed to a composition. An examination was had of three of the plaintiffs before trial and an expert accountant was set to work upon plaintiffs' books. Following this examination, and undoubtedly as a result of it, the defendant amended his answer, by dropping the defense of a composition agreement, alleging fraud in the transactions between himself and plaintiffs in four particulars, and asking, by way of counterclaim, for damages as for a conversion as to two transactions. Plaintiffs thereupon amended their complaint by adding to the causes of action upon the notes one upon the account stated. Defendant again amended his answer, by adding a counterclaim for what he had already paid upon the notes. Plaintiffs replied, but did not otherwise amend their complaint. Nowhere did plaintiffs assert a cause of action upon the general account between defendant and themselves. We have thus stated the course of pleading in detail, because it has a direct bearing upon the final judgment, from which the appeal is taken.

[1, 2] We have examined with care the voluminous record of the trial before the referee, in the light of the very careful and exhaustive briefs of counsel for the respective parties. It would serve no good purpose to go over in detail the evidence upon which the referee has based his findings as to the facts. It will suffice to say that we entirely agree with his conclusions. These, in brief, are that one of the transactions upon which the account stated is based was in no sense a bona fide transaction, but was merely a cover for a bet upon the future price of a certain stock, made between defendant and one of the plaintiffs, in the presence and with the knowledge of at least one other of the plaintiffs; that as to two transactions going to make up the account stated, in which defendant gave orders to sell stocks for his account, plaintiffs, without defendant's knowledge, became themselves the purchasers; that as to two other transactions, in which defendant gave orders to buy stocks for his account, plaintiffs, without defendant's knowledge, became themselves the sellers; that no effectual notice was given to or received by defendant, at the time, that plaintiffs, instead of buying and selling as instructed, had themselves acted as sellers or purchasers; and that the fact that they had so acted was not actually known to defendant until January or February, 1910, when he repudiated the transactions. Upon these facts the referee has held, and we think rightly, that the five transactions above referred to created no legal liability upon the part of defendant to plaintiffs, and that their inclusion in the account destroyed its conclusive effect as an account stated. It follows, of course, that plaintiffs cannot recover upon either count of their complaint, because, the account stated having been successfully impeached, the notes resting

for consideration upon that account can furnish no better basis for a recovery than does the account itself. Bergen v. Hitchings, 22 App. Div. 395, 48 N. Y. Supp. 96.

[3] The complaint, therefore, was rightly dismissed, and it follows logically that defendant is entitled to recover back what he has already paid upon the notes. His payment of them cannot be considered as voluntary, because when he paid them he relied, as he did when he gave them, upon the accuracy of the account.

[4] It is urged that the referee should have restated the account, eliminating the objectionable items, and awarding judgment upon the account as thus restated. Apart from the practical difficulties of doing this, which are well pointed out in the opinion of the referee, it is obvious that to adopt this course would be to render judgment upon an issue not tendered by the pleadings. As already pointed out, the plaintiffs, although warned by defendant's amended answer that he proposed to impeach the account stated, elected deliberately to stand upon it, by omitting to plead, as they might have done, the general account between themselves and the defendant. Thus the plaintiffs elected to stand upon causes of action which affirmed the integrity and conclusiveness of the account stated as a whole. Its integrity and conclusiveness having been successfully attacked, the whole basis of the action fails. It remained, and still remains, if no statute of limitations intervenes, open to them to sue upon the general account, making common-law proof of defendant's indebtedness. If they have not availed themselves of this opportunity, or have waited too long, the fault is their own. It is true that in equity actions, where the debtor comes into court asking that an account be surcharged or falsified, the court will proceed to state the true account, and require the plaintiff to pay what that shows him to owe. That rule, however, is not obligatory in an action at law, in which the debtor on the account merely defends against liability thereon.

[5, 6] A large part of the judgment in defendant's favor is made up of damages for the conversion of those stocks ordered to be sold for his account, of which plaintiffs themselves became the purchasers. On February 9, 1910, upon discovery of the facts, defendant, electing to disavow plaintiffs' acts in themselves purchasing the stocks, tendered to them the amount which would have been due them for purchasing and carrying said stocks to the date of tender, and demanded delivery of the stocks, which was refused. Treating this refusal as a conversion of the stocks, defendant counterclaimed for damages, which have been allowed by the referee on the basis of the value of the stocks at the date of tender, being the difference between the market prices of the stocks at the date of the alleged sale and the market price on the date of tender.

The plaintiffs insist that the conversion, if any, took place when they purchased defendant's stocks and credited him on their books with the proceeds thereof, and that, since that purchase was made at the market price on that day, defendant suffered no damage through their unauthorized act. They concede that the rule of damages adopted by the referee is the correct one, where the customer desires to con-

tinue to carry the stocks for an anticipated profit (McIntyre v. Whitney, 139 App. Div. 557, 124 N. Y. Supp. 234, affirmed 201 N. Y. 526, 94 N. E. 1096); but insist that it has no application where, as in the present case, the customer has ordered the stocks to be sold. The argument is plausible, but fails to take note of the law applicable to the relations of principal and agent. These are well settled, and are stated in Dos Passos on Stockbrokers and Stock Exchanges (2d Ed.) vol. 1, p. 382, as follows:

"The effect of a purchase by a broker or pledgee of the stocks of the client or pledgor, as we have seen, is to render the transactions void, and the cases hold that such a purchase does not change the creditor's relation to his debtor, but that the securities are still held by the creditor under the original titles as security for the original debt. The transaction is treated precisely as if no sale had been made; and the debtor, in order to obtain another sale of the securities, or to redeem them, is not required to prove that the broker or pledgee made a fraudulent sale, or one disadvantageous to himself, but only that he becomes the purchaser. The broker or pledgee, in selling the securities, is in the position of trustee for the client or pledgor, and the law will not allow of the temptation to fraud or the possibility of the same through the trustee becoming purchaser at his own sale. But the pledgor has the option to treat the sale as valid, and to accept the benefits thereof."

The rule of damages adopted by the referee is supported in this state by Evans v. Wrenn, 93 App. Div. 346, 88 N. Y. Supp. 617, affirmed 181 N. Y. 566, 74 N. E. 1117, and in England by Brookman v. Rothschild, 3 Sim. 224, affirmed H. L., 5 Bligh (N. S.) 165. To apply the rule contended for by plaintiffs would be to require the customer to forego his privilege of election, upon discovery of the facts, whether to adopt or to disavow the unauthorized act of his brokers, and to compel him to accept and ratify their unlawful act. The practical efficacy of the rule forbidding a broker to deal himself with his customers' property would be wholly destroyed.

We regret to observe in the appellant's brief many intemperate reflections upon the intelligence and impartiality of the referee—reflections which are in no degree justified by the record. Experienced counsel must know, and those less experienced should learn, that appellate courts are never favorably impressed by practices of this nature.

Judgment affirmed, with costs.

LAUGHLIN, DOWLING, and HOTCHKISS, JJ., concur.

INGRAHAM, P. J. (dissenting). I concur with my Brother SCOTT, except as to the two transactions in which defendant gave orders to sell stock theretofore purchased on his account, but of which plaintiffs themselves became the purchasers. It is conceded that this was a speculative account, whereby plaintiff purchased stock for defendant, not as an investment, but as speculation; defendant furnishing a small amount as margin, and plaintiff furnishing the balance of the purchase money. The speculation having proved unsuccessful, defendant gave plaintiffs orders to sell this stock, which plaintiffs undertook to carry out; but, instead of actually selling the stock on defendant's account, they purchased it themselves, and, in their report of the

sale to defendant, plaintiffs stated facts from which a person examining the report could have ascertained that plaintiffs themselves were the purchasers. The defendant testified in substance that he did not critically examine this report, and the fact that plaintiffs became the purchasers was not called to his attention until after the commencement of the action and an examination of plaintiffs' books disclosed that fact. This examination was in 1910, some three years after the transaction in question. He then tendered to plaintiffs the amount that the plaintiffs had reported that they had sold the stock for, and demanded the stock, and treated the refusal of such demand as conversion, and claimed, and has been allowed to recover, the market price at the time of such conversion.

The question of whether this was a proper measure of damages is thus presented. In a speculation of this character the courts of this state have settled the rule as to the measure of damages in an action of this character. It did not appear in this action what plaintiffs did with the stock after it was purchased by them, and there is no evidence that plaintiffs retained the stock down to the time the demand was made, or for any period after the transaction in question, or realized any profit out of the purchase of the stock. Baker v. Drake, 53 N. Y. 211, 13 Am. Rep. 507, presented a case where a broker carrying stock on such a speculation had sold their customer's stock without authority from the customer. The plaintiff recovered in the trial court on the ground that an unauthorized sale is a conversion, and the measure of damages was the difference between the price of the stock at the time of the sale and the highest market price down to the time of the trial. The Court of Appeals, in speaking of that recovery, said:

"This enormous amount of profit * * * could not have been arrived at, except upon the unreasonable supposition, unsupported by any evidence, that the plaintiff would not only have supplied the necessary margin and caused the stock to be carried through all its fluctuations until it reached its highest point, but that he would have been so fortunate as to seize upon that precise moment to sell. * * * The plaintiff did not hold the stocks as an investment, but the object of the transaction was to have the chance of realizing a profit by their sale. He had not paid for them. The defendants had supplied all the capital embarked in the speculation, except the comparatively trifling sum which remained in their hands as margin. Assuming that the sale was in violation of the rights of the plaintiff, what was the extent of the injury inflicted upon him? He was deprived of the chance of a subsequent rise in price. But this was accompanied with the corresponding chance of a decline, or, in case of a rise, of his not availing himself of it at the proper moment. A continuance of the speculation also required him to supply further margin, and involved a risk of ultimate loss. * * * If the stocks had been paid for and owned by the plaintiff, different considerations would arise; but it must be borne in mind that we are treating of a speculation carried on with the capital of the broker, and not of the customer. If the broker has violated his contract, or disposed of the stock without authority, the customer is entitled to recover such damages as would naturally be sustained in restoring himself to the position of which he has been deprived. He certainly has no right to be placed in a better position than he would be in if the wrong had not been done. * * * It may be as well to remark here as anywhere that the rule of damages should not depend upon the form of the action. In civil actions the law awards to the party injured a just indemnity for the wrong which has been done him, and no more, whether the action be in contract or tort. Except in those special cases where punitory damages

are allowed, the inquiry must always be: What is an adequate indemnity to the party injured? And the answer to that inquiry cannot be affected by the form of the action in which he seeks his remedy."

And Baker v. Drake, 53 N. Y. 211, 13 Am. Rep. 507, seems to have been followed in all the courts of this state as a correct statement of the rule of damages, whether for breach of contract or in tort. The principle of this case was applied by the Supreme Court of the United States in Galigher v. Jones, 129 U. S. 193, 9 Sup. Ct. 335, 32 L. Ed. 658. In discussing the question of the measure of damages in cases of stock held for the customer under such circumstances, the court, after stating the common-law rule, said that the courts of the state of New York had introduced a material modification in the form of the rule, so as to hold the true and just measure of damages in such cases to be the highest intermediate value between the time of its conversion and a reasonable time after the owner has received notice of it to enable him to replace the stock, and that this modification of the rule was very ably enforced in an opinion of the Court of Appeals delivered by Judge Rapallo, in the case of Baker v. Drake, supra, and that on the whole it seemed to the Supreme Court that the New York rule, as finally settled by the Court of Appeals, has the most reasons in its favor, and that court adopted it as the correct view of the law.

Now, it seems to me that, applying the rule as to damages thus established, the defendant could not claim as his damages from this unauthorized act of the plaintiff in acquiring this stock for itself, instead of selling it in the open market, the market price of the stock at the time he claims to have discovered the facts, which was some three years after the transaction. The defendant was conducting a speculation; he had purchased this stock, not as an investment, but for the purpose of making profit by the sale of the stock at an increased value; he never intended to pay for the stock, never intended to acquire its complete title, but the stock was paid for by the plaintiffs and held by it as security for the amount that they had advanced toward its purchase. Defendant had desired to terminate that speculation, and had given orders to the plaintiffs to sell at the market, and it was then the plaintiffs' duty to sell the stock in the market at the best price they could obtain for it. Now this duty they violated by purchasing the stock for themselves. It is clear from this evidence there was no intention to defraud defendant by this transaction. There is no question but that, had they sold this stock in the market, they would not have been able to obtain any higher price then that fixed by them. There was no attempt to conceal these facts, for in the notice to defendant plaintiffs had stated facts from which any one familiar with such transactions, as defendant was, would have seen that they had purchased the stock themselves. There is an entire absence of any attempt at deceit or fraud, and there is no evidence that within a reasonable time after the transaction the price of the stock advanced, or that the plaintiffs themselves subsequently received any higher price for the stock. The case shows plainly, I think, that the defendant suffered no real damages from the fact that plaintiffs took the stock themselves rather than actually selling it in the market. The price of the stock afterward de–

clined, and it was a long time afterward that the stock sold at a higher price than that at which defendant was credited.

Now this is concededly not a case for punitive damages, and that these plaintiffs should be compelled to pay this large sum of money, as represented by the advance in the price of this stock years afterward, it seems to me could only be sustained on the ground that the plaintiffs should be punished for this infraction of their duty in taking this stock themselves, instead of selling it in the open market. If the defendant is to be given only the actual loss which he sustained in consequence of this violation of duty by the plaintiffs, it seems to me apparent from this record that there can be no substantial recovery, for the defendant has sustained no actual damages. He desired to close out the transaction, and ordered the plaintiffs to sell his stock, and plaintiffs undertook to sell it. They violated their duty to the defendant by taking it themselves, and for any damages that defendant sustained in consequence of that violation of duty defendant is entitled to recover; but it seems to me established that he suffered no damage, for as before stated the value of the stock subsequently declined, and there can be certainly no assumption that he would continue to speculate if he had appreciated, as he says he did not, that the plaintiffs had purchased the stock themselves rather than selling it in the open market. If there had been evidence that the plaintiffs subsequently sold the stock at a profit, defendant could have undoubtedly ratified that sale and obtained credit for the amount that plaintiffs subsequently sold at, or if the stock had increased in value within a reasonable time after the transaction it may be assumed that defendant would be entitled to the increased price; but to say that these plaintiffs should be held responsible for the price of the stock three years afterward, when it had substantially increased in value, and when there is no evidence that defendant would have continued to speculate, or that there was the slightest injury to him because plaintiffs took the stock themselves, instead of selling in the open market, seems to me to violate the rule established in this state in the case of Baker v. Drake, supra, and the cases that followed it.

Two cases are cited in the prevailing opinion, neither of which I think is controlling. In Evans v. Wrenn, 93 App. Div. 346, 88 N. Y. Supp. 617, affirmed 181 N. Y. 566, 74 N. E. 1117, plaintiff sued a stockbroker, claiming to recover damages for failure of his duty in regard to a speculative account. The case was tried before a referee, who wrote an opinion in which he allowed to the stockbroker the difference between the value of the amount credited in the account on 100 shares of stock sold by Belden to himself. The dates are not given in the case, but as plaintiff disaffirmed the sale made by Belden to himself on June 6, 1901, and on that day the stock sold at 103, the referee found plaintiff entitled to be credited with the value of the stock at that price. There was no objection by the defendant to this credit and he did not appeal from the judgment. Plaintiff, however, appealed, because the referee disallowed him certain sums he claimed, and the case was affirmed in this court on opinion of the referee, and in the Court of Appeals in 181 N. Y. 566,[1] without opinion. No question was, how-

[1] 74 N. E. 1117.

ever, presented as to the correctness of the referee's ruling, and the dates in the opinion are not sufficient to say that it was error, or that the proof did not show that the plaintiff sustained the damages awarded by the referee.

The other case relied on is Brookman v. Rothschild, 3 Sim. 224, affirmed by the House of Lords in 5 Bligh (N. S.) 165. That case has been criticized in England, and it has not been followed as authority for allowing such recovery as this. But, whatever may be the law in England on this question, I think that the rule in this state is now well settled as I before indicated, and that we are bound to follow the law as settled by the Court of Appeals and the Supreme Court of the United States rather than the decision of the House of Lords.

My conclusion therefore is that this judgment should be modified, by striking out the recovery allowed to the defendant on account of these two sales of stock which the plaintiffs purchased, and, as thus modified, affirmed.