In the Matter of the General Assignment for the Benefit of Creditors of CHARLES H. DICKINSON, as Sole Surviving Partner of the Firm of BEERS & OWENS, to WILLIAM D. GAILLARD.

EDMUND F. HARDING, Petitioner, Appellant, *v.* WILLIAM D. GAILLARD, Respondent.

First Department, February 4, 1916.

Principal and agent — stockbrokers — pledge of collateral by customer to secure indebtedness to brokers — assignment for benefit of creditors — fraud — fictitious sale for customer — measure of damages.

Where a firm of stockbrokers has made a general assignment for the benefit of creditors a customer who owns stock pledged with the insolvents as security for any balance due from him is entitled to a return of the securities on payment of the balance due, where the certificates have been identified and there is no other claim upon them.

Where such customer owned and had in his possession certain shares of stock and ordered the brokers to sell them for his account at a specified price, but the brokers, instead of following instructions and after the customer had canceled the order to sell, falsely reported that they had made the sale, and where they retained in their possession the stocks which were intrusted to them for delivery to the supposed purchaser, and afterwards delivered them on a subsequent sale made for another customer, the owner of the stock is entitled to be credited with the market price of the stock within a reasonable time after the discovery by him of the fraud, and is not bound by the price at which he had originally ordered the sale to be made.

On a payment by said customer of the balance due the broker, figuring the sale at the advanced market price, he is entitled to a return of other securities pledged to secure the general balance of his account.

*It seems,* that if the brokers be deemed to have sold the plaintiff's stock to themselves the transaction would be void.

*It seems,* that the customer was entitled to set off his claim for damages for the breach of contract by the brokers against the general balance owing by him to them.

APPEAL by the petitioner, Edmund F. Harding, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 6th day of December, 1915, denying his motion for an order requiring the assignee for the benefit of creditors of the stock brokerage copartnership firm of Beers &

Owens to deliver to him 300 shares of Interborough Metropolitan common stock upon the terms proposed by him.

*John R. Dos Passos,* for the appellant.

*Charles Capron Marsh,* for the respondent.

LAUGHLIN, J.:

The relation of customer and brokers existed between appellant and the firm of Beers & Owens. At the time of the assignment the brokers held for appellant, and as security for any balance of account owing to them, 300 shares of Interborough Metropolitan common stock. There is, and can be, no doubt that the petitioner is entitled to the return of the stock on payment of the balance of account, for the certificates have been identified as belonging to petitioner, and no one else claims them. (*Gorman* v. *Littlefield,* 229 U. S. 19.) The sole question presented by the appeal is, what is the balance of account owing by appellant, upon payment of which he is entitled to the return of the stock?

Appellant contends that such balance on the 9th day of September, 1915, when the assignment was filed, was $1,006.95; but the court held that it was $3,806.95, and the order under review directs the assignee to deliver the stock upon payment of that amount and interest thereon from September 9, 1915. The correct debit balance of the appellant with the brokers depends upon transactions concerning 100 shares of common stock in the Allis-Chalmers Manufacturing Company. Prior to the 17th day of July, 1915, appellant ordered the brokers to sell 100 shares of common stock in the Allis-Chalmers Manufacturing Company at nineteen dollars per share for his account. He had the stock and intended to deliver it if they executed the order, but they evidently supposed it was a short sale. On the morning of July seventeenth he telephoned the brokers, with a view to canceling the order, and so stated to one of them, and was informed that it was then above twenty dollars per share and was very active, and that while a report had not been received on his order "it must have" been executed, and he received notice from the brokers by mail that they had executed the order

and had sold at nineteen dollars per share. Appellant delivered 50 shares of the stock to the brokers on July nineteenth and 50 shares on August second for delivery to the purchaser. This stock was not delivered by the brokers to any customer in fulfillment of any sale made on July 17, 1915, but was delivered by them in pursuance of an unidentified subsequent sale made for another customer. It is undisputed that the report of sale of this stock by the brokers was false, and that petitioner did not discover the truth until September 20, 1915, and that if appellant was entitled to the benefit of the market price within a reasonable time thereafter, the debit balance should be revised in accordance with his claim, for it is conceded that September 28, 1915, was, as matter of law, a reasonable time after appellant discovered the falsity of the report, and that the market price of the stock on that day was forty-seven dollars per share. The uncontradicted evidence shows that only one sale of 100 shares of Allis-Chalmers common stock was made by the brokers to a third party on July 17, 1915, and that it was made at twenty-one dollars and fifty cents per share; that the blotter kept by the brokers falsely showed two sales of said stock of 100 shares each, one for appellant at nineteen and the other for one Barton, another customer, at twenty-one; that the brokers had in their possession 100 shares of Allis-Chalmers common owned by said Barton, who prior to the sale had ordered them to sell it, and they reported to him that they had sold it at twenty-one, and they consummated the sale made by them that day by delivering his stock to the purchaser. The only theory that can arise on the facts with respect to another sale is that the brokers sold the stock to themselves, and that would be a void transaction. (*Stiebel* v. *Lissberger*, 166 App. Div. 164.) The learned justice at Special Term ruled in effect that since appellant authorized the brokers to sell at nineteen, he was only entitled to an offset on the basis of that valuation.

That view, I think, is erroneous. When appellant notified the brokers on Saturday, July 17, 1915, that he wished to cancel the order, the stock had not been sold, but they led him to believe that his order to sell at nineteen had been executed, and they confirmed that belief by mailing a false report of the

sale, which he received on Monday. Not having executed his order to sell at nineteen until after they knew he desired to cancel it, the subsequent sale was a conversion for which he could recover, unless he ratified the unauthorized act of his brokers in making the sale without authority, in which case they would be accountable to him for the price at which they actually sold it, and then it would be necessary to determine that question. But that is not necessary, for there is no evidence of ratification. He was led by the false representations of the brokers, to acquiesce in the sale, but that was not a ratification, for by falsely reporting that they had sold the stock before he canceled the order he was justified in believing that such was the fact. There could, therefore, be no ratification of the unauthorized sale until he discovered that it was made at a time when the brokers were not authorized to sell. The sale not having been made pursuant to his instructions, was not binding upon him (*Wright* v. *Bank of Metropolis*, 110 N. Y. 237; *Day* v. *Holmes*, 103 Mass. 306), and whether he proceeded against the brokers for the conversion or waived the tort, as here, and asserted his damages as for a breach of contract, the damages are to be determined by the highest market price of the stock within a reasonable time after he discovered that the sale was made after he had canceled the authority of the brokers to sell. (*Stearns* v. *Marsh*, 4 Den. 227; *Baker* v. *Drake*, 53 N. Y. 211, 213; *Wright* v. *Bank of Metropolis*, *supra; Minor* v. *Beveridge*, 141 N. Y. 399, 403; *Burhorn* v. *Lockwood*, 71 App. Div. 301, 303, and cases cited; *Barber* v. *Ellingwood, No. 2*, 137 id. 704, 713; *Des Jardins* v. *Hotchkin*, 142 id. 845.)

We agree with the learned court at Special Term that appellant was entitled to set off his claim for damages for the breach of the contract against the general balance owing by him to the brokers (Debtor and Creditor Law [Consol. Laws, chap. 12; Laws of 1909, chap. 17], § 13, as added by Laws of 1914, chap. 360. See, also, *Wood* v. *Fisk*, 215 N. Y. 238, 239); but, for the reasons herein stated, a wrong rule of damages was applied, evidently on the erroneous theory that the customer should have repurchased the stock. (*Burhorn* v. *Lockwood*, *supra*, 304.)

It follows, therefore, that the order should be reversed, with ten dollars costs and disbursements, and motion granted as prayed for, by requiring the assignee to deliver the stock on payment of $1,006.95, together with interest thereon from the 9th day of September, 1915.

CLARKE, P. J., McLAUGHLIN, SCOTT and PAGE, JJ., concurred.

Order reversed, with ten dollars costs and disbursements, and motion granted as stated in opinion. Order to be settled on notice.