In the Matter of the General Assignment for the Benefit of
Creditors of WOLFF INDUSTRIAL SERVICE, INC., Assignor, to
HENRY D. SAYER and Another, Assignees, Respondents.

BARSKY, OLIVER & WOLFF, Copartners, etc., Creditors, Appellants,
WILLIAM F. CHATLOS, Creditor, Respondent.

First Department, July 3, 1935.

*A. Loeb Salkin* of counsel [*Jacob Rabkin* with him on the brief; *Salkin & Korn*, attorneys], for the appellants.

*Gerald G. Schwartz*, for the assignees, respondents.

UNTERMYER, J.   Prior to November 11, 1932, Wolff Industrial Service, Inc., a domestic corporation, was engaged in the business of furnishing to insurance companies, employers of labor and others, services as might be required under the provisions of the Work-men's Compensation Law and the Labor Law of the State of New York.   About October 22, 1923, it entered into an agreement with a copartnership consisting of Drs. Meyer Wolff, Michael H. Barsky and Walter H. Oliver, physicians engaged in the practice of medicine in this State, whereby the latter leased from the cor-poration certain clinics, sanatoriums and offices and agreed to pay as rental and for administrative services a sum equal to sixty per cent of all fees earned by the medical copartnership for professional services rendered.   To secure payment to the corporation, the copartnership assigned to the corporation all fees then or thereafter earned and appointed the corporation its agent for collection.   This was provided as follows:

" *Third.* It is further mutually agreed and understood that the parties of the second part [medical copartnership] shall and will pay to the party of the first part [Wolff Industrial Service, Inc.] as rent of the said premises a sum equal to sixty (60%) per cent of all fees earned by the parties of the second part; and for the purpose of securing the party of the first part in the payment of the said rent, the parties of the second part do hereby assign, transfer and set over unto the party of the first part all of their right, title and interest in and to any and all fees to which they are or shall hereafter become entitled, and after the party of the first part shall have received the rent as aforesaid it shall pay and deliver to the parties of the second part the overplus of monies received by it.   And the parties of the second part do hereby make, constitute and appoint the party of the first part their, and each of their, agent, to collect any and all said money."

After the death of Dr. Meyer Wolff, in December, 1927, the contract was continued with the surviving partners, Drs. Barsky and Oliver.   In September, 1931, Dr. Julian Wolff was admitted as a partner and the contract remained in effect with this new partnership.

On November 11, 1932, Wolff Industrial Service, Inc., made an assignment for the benefit of creditors to Henry D. Sayer and Morris A. Shulman, as assignees.   The copartners, as creditors,

filed two claims with the assignees. In the first claim for $15,093.34 it was alleged that forty per cent of all moneys theretofore collected by the assignees, representing fees earned for professional services rendered prior to the date of the assignment but uncollected by the assignor, belonged to the copartnership and that it had a preferred claim for that amount. In the second claim for $7,673.46 it was alleged that forty per cent of all moneys thereafter to be collected by the assignees likewise belonged to the copartnership and that it had a preferred claim for that amount contingent upon the collection thereof. The matter of taking and settling the account of the assignees was referred to a referee. The copartners have appealed from the order confirming the referee's report in so far as it allows the copartnership only a general claim against the estate for $16,547.52 and excludes therefrom forty per cent of any amount which the assignees may receive on a claim still outstanding against the city of New York for $1,783. As to the latter item, the assignees concede that the appellants are entitled to a forty per cent general claim of any moneys hereafter collected from the city of New York. The referee found that the assignees actually collected out of the accounts receivable, as shown by their final report, the sum of $41,368.80 and that if there had been no assignment, the assignor would have been obligated to pay the copartnership forty per cent thereof, amounting to $16,547.52. The question on this appeal is whether the appellants are entitled to a preferred claim against the estate, or merely to a general claim sharing proportionately with general creditors.

The referee held that the corporate assignor could not be regarded as a trustee of the funds collected for the benefit of the copartnership, because the " 60%–40% " provisions of the contract had not been adhered to, no allocation of the funds had been made, overdrawals by the copartnership had been canceled by the adoption of corporate resolutions, and funds of the corporation and the copartnership had been commingled. The settled rule is that laxity or negligence on the part of the trustee does not destroy the trust relationship. " Confusion resulting from the acts of the trustee should never embarrass the rights of the owner or *cestui que trust* in following his property." (*Matter of Hicks*, 170 N. Y. 195, 201.) The evidence shows that not only did the copartnership maintain separate books of account but that moneys due to it were promptly paid over by the corporation and deposited in the separate bank accounts of the copartnership. The referee found that failure to adhere to the " 60%–40% " provisions of the contract was explained as due to a modification of the contract made in January, 1928,

after the death of Dr. Meyer Wolff. At that time it was agreed that the salaries of the nurses, masseurs and radiographers theretofore paid by the corporation would be paid thereafter by the copartnership, and the percentage of receipts of sixty per cent and forty per cent to the corporation and the copartnership, respectively, would be modified to allow the latter an additional amount as reimbursement for this additional outlay. The referee found also that although the copartnership received as much as fifty per cent of the moneys collected by the assignor, it disbursed and expended at least the amount of the ten per cent excess for salaries of such employees, which theretofore had been paid by the corporation. Moreover, the claim of the partnership relates exclusively to accounts collected after the assignment, as to which concededly it never relinquished the benefit of its trust position. Even if the partnership had been content to permit the commingling of funds previous to the assignment, it was not precluded from insisting thereafter upon the proper allocation of funds in accordance with the contract — at least with respect to uncollected accounts. Those specific funds can be traced and identified. They were due from particular debtors for professional services rendered by the copartners and have, since collection, been deposited in the assignees' bank account. They were acquired by the assignees subject to all equities and liens that might have been enforced against the assignor. (*Kane Co.* v. *Kinney*, 174 N. Y. 69; *Matter of Law Book Co., Inc.*, 239 App. Div. 363.) Consequently, if there existed a trust or agency relation between the partnership and the corporation in the collection of the accounts and the distribution of the proceeds, then the partnership is entitled to a preference as against general creditors.

In resisting that claim the assignees contend that the relation was not one of trust or agency but of debtor and creditor. We are of the opinion that the contention is not tenable. By the contract the accounts of the partnership were assigned to the corporation, not absolutely, but only " for the purpose of securing " the corporation " in the payment of the said rent." The same conclusion follows from the fact that the corporation is constituted the agent of the partnership to collect the accounts — a provision manifestly incompatible with any absolute assignment to the corporation. It was the obvious purpose of the contract that the corporation, the pledgee, should collect the accounts as the agent of the partnership, the pledgor, which still would retain title thereto, and make distribution between the parties in accordance with the contract. As collections were made, the corporation held the proceeds in trust,

first for itself as pledgee to the extent of sixty per cent and then, as to forty per cent, for the partnership. (*Toplitz* v. *Bauer*, 161 N. Y. 325; *National B. & D. Bank* v. *Hubbell*, 117 id. 384; *Wheeler* v. *Newbould*, 16 id. 392; *Matter of Dickinson*, 171 App. Div. 486.) The situation differs from such cases as *Mendelson-Silverman, Inc.,* v. *Malco Trading Corp.* (146 Misc. 215; affd., 238 App. Div. 852; affd., 262 N. Y. 621) and *Levinson* v. *Shapiro* (238 App. Div. 158; affd., 263 N. Y. 591), not only by reason of the fact that the pledge here was not of a sum of money but of specific property capable of identification (*Lehmeyer* v. *Provident Loan Society*, 31 Misc. 719), but because the agreement is replete with indications of intention that the partnership does not relinquish title to the accounts. Where cash is deposited with a landlord as security, the obligation to return the security may be said not to imply a duty to return the identical money deposited. Therefore, commingling by the landlord of such funds, in the absence of specific prohibition, is fairly within the contemplation of the parties. Because the landlord need not return the same money which he has received, but is only under an obligation to repay a sum equal in amount, the relation has been held to be that of debtor and creditor. But where specific property is deposited as security a different relation is created arising from the presumed intention of the parties that the same property shall be returned. Such was the situation here. The partnership retained title to the accounts until collection by the corporation as its agent. After collection, the proceeds were no longer to be held as security under the lease but there devolved upon the corporation the duty to make immediate distribution in accordance with the contract. If the corporation had collected the accounts it would have held forty per cent of the proceeds as trustee until payment to the partnership of its distributive share. (*Marvin* v. *Brooks*, 94 N. Y. 71.) The assignees are in no superior position. Such funds are not available for distribution to the general creditors of the estate. (*Welch* v. *Polley*, 177 N. Y. 117; *Matter of Hicks*, supra; *Matter of Cavin* v. *Gleason*, 105 N. Y. 256; *People* v. *City Bank of Rochester*, 96 id. 32.) The same applies to the appellants' claim to forty per cent of any amount which the assignees may collect from the city of New York on account of the claim for $1,783.

The order, in so far as appealed from, should be reversed, with costs to the appellants payable out of the estate, and appellants' claim declared to be a preferred claim in the sum of $16,547.52, less the sum of $608.44 found to be due from them to the assignees, plus forty per cent of whatever may hereafter be collected by the

assignees from the city of New York in respect of the claim for $1,783.

MERRELL, McAVOY and O'MALLEY, JJ., concur; MARTIN, P. J., dissents in so far as a preference is allowed to the claim of Barsky, Oliver & Wolff.

On the appeal of Barsky, Oliver & Wolff, order in so far as appealed from by said claimants reversed, with costs to the appellants payable out of the estate, and their claim allowed as a preferred claim in the sum of $16,547.52, less $608.44, plus forty per cent of whatever may be collected from the city in respect to the claim of $1,783.

Settle order on notice.   (See *post*, p. 807.)