BURHORN v. LOCKWOOD et al.

(Supreme Court, Appellate Division, First Department. April 18, 1902.)

1. BROKERS—LIABILITY TO PRINCIPAL—UNAUTHORIZED SALE—RATIFICATION.
   An owner of stock, who, on receiving a telephone message from his broker that the stock had been sold, immediately informed the broker by telephone that the person directing the sale was without authority to do so, will not be deemed to have ratified the sale by retaining, without objection, an account of the sale subsequently received.

2. SAME—DAMAGES—REASONABLE TIME.
   Where the market price of stock had become fairly settled again within 29 days after the sale, and ample opportunity was afforded within that time to the customer to repurchase the stock, 29 days will be deemed a reasonable time, within the rule that a customer may recover as damages for an unauthorized sale of stock of a fluctuating value the difference between the price at which the stock was sold and the highest market price attained within a reasonable time thereafter.

Appeal from special term, New York county.

Action by Edwin Burhorn against Henry B. Lockwood and others, as partners composing the firm of Lockwood, Hurd & Company. From a judgment in favor of the plaintiff, the defendants appeal. Judgment modified and affirmed on conditions.

Argued before VAN BRUNT, P. J., and PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

Clarence L. Barber, for appellants.
Walter I. McCoy, for respondent.

LAUGHLIN, J. The action is brought to recover damages for an unauthorized sale of stock. The appellants were stockbrokers, and on the 3d day of April, 1899, pursuant to an order from respondent, they purchased on his account 100 shares of stock known as "Federal Steel" at 74 per cent., or for $7,400, which, with the exception of $800 received from the respondent, the appellants advanced. The brokers also received from the respondent $250 on April 5th, the same amount on April 6th, and $1,452 on April 11th. On the 13th of May thereafter, during the panic following the death

of Ex-Governor Flower, the brokers sold the stock at 51½, realizing thereon $5,081.50 after deducting commissions. It is conceded for the purpose of this appeal that the sale was unauthorized.

The first contention on the part of the appellants is that the respondent acquiesced in or ratified the sale, and therefore was not entitled to recover. After the sale, but on the same day, the respondent was informed of it by a telephonic message from appellants' office. The respondent thereupon asked to talk with appellant Kelly, who came to the phone, and was asked by respondent why he was sold out, to which Kelly responded that it was on the order of one Peters. The respondent then informed Kelly that Peters had no authority to sell him out, and asked why he was not called on for more margins, and if they thought he was not good for the margin, to which Kelly replied that he did not think so, and in those particularly turbulent times there was no time to call upon him, and they had to protect themselves. On the evening of that day appellants mailed to respondent a statement of the sale, showing that it had been made 'on stop order given by D. S Peters." This statement was retained by respondent without. further communication with appellants until October 11, 1899, when he made a written demand upon them for $1,587.50, damages for breach of contract to purchase and carry the stock. Subsequently, and on the 26th day of October, 1899, he commenced this action.

Since no rights of third parties intervened ratification depends upon whether there was an intention to approve the unauthorized sale. Hopkins v. Clark, 7 App. Div. 207, 213, 40 N. Y. Supp. 130, affirmed in 158 N. Y. 299, 53 N. E. 27. Having distinctly informed the appellants that the sale was unauthorized, it cannot be said, as matter of law, that he was obliged to return the account of sale subsequently received, and that for his failure so to do he is to be deemed to have acquiesced in or ratified the unauthorized sale. Minshall v. Arthur, 2 Hun, 662; Stenton v. Jerome, 54 N. Y. 480; Quincey v. White, 63 N. Y 370; Merritt v. Bissell, 155 N. Y. 396, 50 N. E. 280.

The only other question presented by the appeal relates to the measure of damages. The plaintiff has recovered the difference between the price at which the stock was wrongfully sold and 66½ per cent. of its face value, that being the maximum selling price of the stock on the New York Stock Exchange on the 13th day of June, 1899, one month thereafter. It appears that there were daily sales of this stock on the New York Stock Exchange; that between the date of the purchase and the sale the market price fluctuated almost daily, dropping to 57½ on the 7th of April, remaining at about 60 for three days thereafter, ranging, from April 12th down to May 1st, from 64⅜, as the lowest minimum, on April 12th, to 69⅜ as the highest maximum, on April 17th, when it again dropped to 64½ as the minimum, the minimum rising again to 67¾ on the 3d, dropping to 58½ on the 9th, rising to 61¼ on the 12th, and the price ranging from 58 to 50 on the 13th; that the 14th was Sunday, and on the 15th the maximum price was 58 and the minimum 55½, on the 16th maximum 57⅞, minimum 56, on the 17th maximum 62,

minimum 57¾, and on the 18th maximum 62⅞ and minimum 60⅞; that the maximum of 62⅞ on May 18th was the highest price at which any of this stock was sold until June 12th, when the maximum was 65⅛; and that between the 18th of May and 12th of June the lowest price was 58⅛ on June 1st, and the highest 62½ on the 10th, there being a variation of only a few points on the other days.

Cases of this nature have frequently been before the courts, and the rule is now well settled that where an unauthorized sale of stock of a fluctuating value is made by brokers the customer may recover, as damages, the difference between the price at which the stock was wrongfully sold and the highest market price at which like stock was sold in the open market within a reasonable time thereafter. Wright v. Bank, 110 N. Y. 237, 18 N. E. 79, 1 L. R. A. 289, 6 Am. St. Rep. 356; Griggs v. Day, 158 N. Y. 1, 52 N. E. 692; Baker v. Drake, 53 N. Y. 211, 13 Am. Rep. 507; Id., 66 N. Y. 518, 23 Am. Rep. 80; Scott v. Rogers, 31 N. Y. 676; Hoyt v. Fuller, 43 C. C. A. 466, 104 Fed. 192. This is an exception to the ordinary rule that for the wrongful conversion of personal property the damage recoverable by the owner is its value at the time of the conversion. The reason for the exception lies in the fact that stock is of a fluctuating value. The stock market at times becomes panicky, and the customer would be at the mercy of the broker, were the latter at liberty, without notice or calling upon the customer for additional margin, to sell the stock at a time when the market is depressed. Such stocks are usually held, and in the hands of brokers, for speculation, and the measure of damages is what it would cost the customer to replace the stock within a reasonable time. The customer is given a reasonable time to replace the stock, or, rather, to determine whether he wishes to or is able to replace it, for replacing it is not a condition precedent to his right to recover damages. Smith v. Savin, 141 N. Y. 315, 36 N. E. 338. The authorities hold that what is a reasonable time in such case on uncontroverted facts is a question of law for the court; but no case is cited, and we find none, which lays down any rule as to what constitutes a reasonable time or states the elements that enter into the determination of the question, and therefore these precedents are of little or no aid. In Smith v. Savin, supra, it was stated, but not necessarily decided, that from May 14th to June 21st would have been an unreasonable time. In Colt v. Owens, 90 N. Y. 368, it was held that 30 days was a reasonable time. In Randall v. Bank, 1 N. Y. St. Rep. 592, it was held that a reasonable time elapsed before the expiration of six months, and that the question depends upon the circumstances of each particular case. In Scott v. Rogers, supra, the reasoning of the court would indicate that, inasmuch as the broker is the defaulting party, the customer should be given a liberal allowance of time in which to replace the stock.

The respondent resided in the city of New York, and was here at the time. No other facts or circumstances are shown which aid in the determination of the question. In the absence of evidence of special circumstances showing other elements of necessity for further time, we think it may be stated, as a general rule, that the

customer is entitled to a reasonable opportunity to consult counsel, to employ other brokers, and to watch the market for the purpose of determining whether it is advisable to purchase on a particular day, or when the stock reaches a particular quotation, and to raise funds if he decide to repurchase. Doubtless the customer's financial ability would not enter into a determination of the question; but, assuming that he had property or securities, he should be given a reasonable time to convert them into money or to raise money on their security. Perhaps the most important of these elements is time to reflect and consider what is the tendency of the market, and at what price it is advisable to purchase, in view of all the facts and circumstances. If the customer repurchases the stock at a higher figure, which is his right, he is investing his own money, and running the risk of recovering it from the broker. On this record it appears that within the 29 days following the unauthorized sale, and prior to the 12th day of June, the market price of this stock had become fairly settled again, and that there was within that period ample time and opportunity for the respondent to repurchase if he desired to do so. We are of opinion, therefore, that the reasonable time during which the plaintiff is entitled to the highest price at which the stock sold on the exchange expired prior to the 12th day of June; and, inasmuch as the highest price at which the stock sold prior to the last-mentioned date, and after the unauthorized sale, was 62⅞, on the 18th of May, that should have been adopted as the basis of the recovery.

It follows, therefore, that the judgment should be reversed, and a new trial granted, with costs to appellant to abide the event, unless the respondent shall stipulate to reduce the recovery by the difference between the price of the stock at 66½ and at 62⅞, together with interest thereon from the time of the recovery, and, in the event of such stipulation being filed, the judgment as so modified should be affirmed, with costs to appellants. All concur.