In re DICKINSON.

(Supreme Court, Appellate Division. First Department. February 4, 1916.)

1. ASSIGNMENTS FOR BENEFIT OF CREDITORS ☞176—ASSETS—SHARES OF STOCK.

   Where a firm of brokers, at the time of their assignment for the benefit of creditors, held for a customer, and as security for any balance of account owing to them, certain shares of stock, the customer, identifying the certificates as belonging to him, in the absence of any other claim, was entitled to its return, on payment of the balance of his account.

   [Ed. Note.—For other cases, see Assignments for Benefit of Creditors, Cent. Dig. §§ 513–522, 547; Dec. Dig. ☞176.]

2. BROKERS ☞31—STOCKBROKERS—PURCHASE OF CUSTOMER'S STOCK—EFFECT.

   Where a stockbroker, upon a customer's order to sell stock, sells the stock to himself, the transaction is void.

   [Ed. Note.—For other cases, see Brokers, Cent. Dig. § 24; Dec. Dig. ☞31.]

3. BROKERS ☞35—STOCKBROKERS—SALE OF CUSTOMER'S STOCK—CONVERSION.

   A stockbroker, who, after a customer's notice to cancel his order to sell stock which had not then been sold, led the customer to believe that his order to sell had been executed, and confirmed that belief by mailing a false report of the sale, by such subsequent sale converted the stock.

   [Ed. Note.—For other cases, see Brokers, Cent. Dig. § 27; Dec. Dig. ☞35.]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

4. BROKERS ⬅═36—STOCKBROKERS—CONVERSION OF CUSTOMER'S STOCK—RATIFICATION.

In such case, where· the customer was led by the false representation of the broker and his false report to believe that the stock had been sold before the order to sell had been canceled, such acquiescence was not a ratification, and there could be no· ratification of the sale until the customer discovered that it was unauthorized.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 29, 30; Dec. Dig. ⬅═36.]

5. BROKERS ⬅═30—UNAUTHORIZED SALE OF STOCK—EFFECT.

A broker's sale of stock, not made pursuant to his customer's instruction, was not binding upon the customer.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 23; Dec. Dig. ⬅═30.]

6. ACTION ⬅═28—STOCKBROKERS—CONVERSION OF CUSTOMER'S STOCK—WAIVER.

A customer, whose broker had converted his stock by means of a sale subsequent to the customer's cancellation of his order to sell, might waive the tort and assert his damages as for a breach of contract.

[Ed. Note.—For other cases, see Action, Cent. Dig. §§ 196–215; Dec. Dig. ⬅═28.]

7. BROKERS ⬅═38—SALE OF STOCK—BREACH OF CONTRACT—DAMAGES.

In a customer's action of contract for damages for his broker's sale of stock subsequent to the cancellation of the order to sell, the damages were to be determined by the highest market price of the stock within a reasonable time after the customer discovered that the sale was so made.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 31–36; Dec. Dig. ⬅═38.]

8. ASSIGNMENTS FOR BENEFIT OF CREDITORS ⬅═307—DEBTS PROVABLE AGAINST THE ESTATE—BALANCE DUE ON STOCK TRANSACTION.

Under Debtor and Creditor Law (Consol. Laws, c. 12) § 13, as amended by Laws 1914, c. 360, defining the debts which may be proved against the estate of an assignor for the benefit of creditors, including a claim founded upon an open account, or upon a contract express or implied, a customer of the assignor, a stockbroker, was entitled to set off his claim for damages for the assignor's breach of contract against the general balance due from him to the assignor.

[Ed. Note.—For other cases, see Assignments for Benefit of Creditors, Cent. Dig. §§ 893–899; Dec. Dig. ⬅═307.]

Appeal from Special Term, New York County.

In the matter of the general assignment for the benefit of creditors by Charles H. Dickinson, as sole surviving partner of Beers & Owens, to William D. Gaillard. From an order of the Special Term (156 N. Y. Supp. 238), denying his motion for an order requiring the assignee of the stock brokerage copartnership firm of Beers & Owens to deliver to him 300 shares of Interborough Metropolitan common stock upon terms proposed by him, petitioner, Edmund F. Harding, appeals. Order reversed, and motion granted.

Argued before CLARKE, P. J., and McLAUGHLIN, LAUGHLIN, SCOTT, and PAGE, JJ.

John R. Dos Passos, of New York City, for appellant.
Charles Capron Marsh, of New York City, for respondent.

LAUGHLIN, J. [1] The relation of customer and brokers existed between appellant and the firm of Beers & Owens. At the time of the assignment, the brokers held for appellant, and as security for any balance of account owing to them, 300 shares of Interborough Metropolitan common stock. There is, and can be, no doubt that the petitioner is entitled to the return of the stock on payment of the balance of account, for the certificates have been identified as belonging to petitioner, and no one else claims them. Gorman v. Littlefield, 229 U. S. 19, 33 Sup. Ct. 690, 57 L. Ed. 1047. The sole question presented by the appeal is: What is the balance of account owing by appellant, upon payment of which he is entitled to the return of the stock?

Appellant contends that such balance on the 9th day of September, 1915, when the assignment was filed, was $1,006.95; but the court held that it was $3,806.95, and the order under review directs the assignee to deliver the stock upon payment of that amount and interest thereon from September 9, 1915. The correct debit balance of the appellant with the brokers depends upon transactions concerning 100 shares of common stock in the Allis-Chalmers Manufacturing Company. Prior to the 17th day of July, 1915, appellant ordered the brokers to sell 100 shares of common stock in the Allis-Chalmers Manufacturing Company at $19 per share for his account. He had the stock, and intended to deliver it, if they executed the order; but they evidently supposed it was a short sale. On the morning of July 17th he telephoned the brokers, with a view to canceling the order, and so stated to one of them, and was informed that it was then above $20 per share and was very active, and that while a report had not been received on his order "it must have" been executed, and he received notice from the brokers by mail that they had executed the order and had sold at $19 per share. Appellant delivered 50 shares of the stock to the brokers on July 19th and 50 shares on August 2d for delivery to the purchaser. This stock was not delivered by the brokers to any customer in fulfillment of any sale made on July 17, 1915, but was delivered by them in pursuance of an unidentified subsequent sale made for another customer.

[2] It is undisputed that the report of sale of this stock by the brokers was false, and that petitioner did not discover the truth until September 20, 1915, and that, if appellant was entitled to the benefit of the market price within a reasonable time thereafter, the debit balance should be revised in accordance with his claim, for it is conceded that September 28, 1915, was, as matter of law, a reasonable time after appellant discovered the falsity of the report, and that the market price of the stock on that day was $47 per share. The uncontradicted evidence shows that only one sale of 100 shares of Allis-Chalmers common stock was made by the brokers to a third party on July 17, 1915, and that it was made at $21.50 per share; that the blotter kept by the brokers falsely showed two sales of said stock, of 100 shares each, one for appellant at 19, and the other one for Barton, another customer, at 21; that the brokers had in their possession 100 shares of Allis-Chalmers common owned by said Barton, who prior

to the sale had ordered them to sell it, and they reported to him that they had sold it at 21, and they consummated the sale made by them that day by delivering his stock to the purchaser. The only theory that can arise on the facts with respect to another sale is that the brokers sold the stock to themselves, and that would be a void transaction. Stiebel v. Lissberger, 166 App. Div. 164, 151 N. Y. Supp. 822.

[3, 4] The learned justice at Special Term ruled in effect that, since appellant authorized the brokers to sell at 19, he was only entitled to an offset on the basis of that valuation. That view, I think, is erroneous. When appellant notified the brokers on Saturday, July 17, 1915, that he wished to cancel the order, the stock had not been sold; but they led him to believe that his order to sell at 19 had been executed, and they confirmed that belief by mailing a false report of the sale which he received on Monday. Not having executed his order to sell at 19, until after they knew he desired to cancel it, the subsequent sale was a conversion, for which he could recover, unless he ratified the unauthorized act of his brokers in making the sale without authority, in which case they would be accountable to him for the price at which they actually sold it, and then it would be necessary to determine that question. But that is not necessary, for there is no evidence of ratification. He was led by the false representations of the brokers to acquiesce in the sale, but that was not a ratification, for by falsely reporting that they had sold the stock before he canceled the order he was justified in believing that such was the fact. There could, therefore, be no ratification of the unauthorized sale, until he discovered that it was made at a time when the brokers were not authorized to sell.

[5-7] The sale, not having been made pursuant to his instructions, was not binding upon him (Wright v. Bank of Metropolis, 110 N. Y. 237, 18 N. E. 79, 1 L. R. A. 289, 6 Am. St. Rep. 356; Day v. Holmes, 103 Mass. 306) ; and whether he proceeded against the brokers for the conversion, or waived the tort, as here, and asserted his damages as for a breach of contract, the damages are to be determined by the highest market price of the stock within a reasonable time after he discovered that the sale was made after he had canceled the authority of the brokers to sell. Stearns v. Marsh, 4 Denio, 227, 47 Am. Dec. 248; Baker v. Drake, 53 N. Y. 211–213, 13 Am. Rep. 507; Wright v. Bank of Metropolis, supra; Minor v. Beveridge, 141 N. Y. 399–403, 36 N. E. 404, 38 Am. St. Rep. 804; Burhorn v. Lockwood, 71 App. Div. 301–303, 75 N. Y. Supp. 828, and cases cited; Barber v. Ellingwood, 137 App. Div. 704–713, 122 N. Y. Supp. 369; Des Jardins v. Hotchkin, 142 App. Div. 845, 127 N. Y. Supp. 504.

[8] We agree with the learned court at Special Term that appellant was entitled to set off his claim for damages for the breach of the contract against the general balance owing by him to the brokers. Debtor and Creditor Law, § 13, as amended by chapter 360, Laws of 1914. See also Wood v. Fish, 215 N. Y. 238–239, 109 N. E. 177. But, for the reasons herein stated, a wrong rule of damages was applied, evidently on the erroneous theory that the customer should have repurchased the stock. Burhorn v. Lockwood, supra, 71 App. Div. 304, 75 N. Y. Supp. 828.

It follows, therefore, that the order should be reversed, with $10 costs and disbursements, and motion granted as prayed for, by requiring the assignee to deliver the stock on payment of $1,006.95, together with interest thereon from the 9th day of September, 1915. Settle order on notice. All concur.