SATTERWHITE v. HARRIMAN NAT. BANK & TRUST CO. OF CITY OF NEW YORK et al.

District Court, S. D. New York.

Dec. 2, 1935.

494

Gleason, McLanahan, Merritt & Ingraham, of New York City (Burgess Osterhout, of New York City, of counsel), for plaintiff.

O'Brien, Boardman, Hewitt, Memhard & Early, of New York City (David Asch, of New York City, of counsel), for defendants Harriman National Bank & Trust Co. and Frederick V. Goess, as receiver.

·WOOLSEY, District Judge.

The exceptions of the plaintiff and of the defendants are hereby overruled. The special master's report is in all respects confirmed and approved, and is hereby adopted as the opinion of the court in this aspect of the cause.

I. This opinion by the special master, Edward W. Bourne, Esq., rendered October 15, 1935, is as follows:·

On April 26, 1932, the plaintiff borrowed $300,000 from the defendant the Harriman National Bank & Trust Company of the city of New York, hereinafter referred to simply as the bank, and delivered to the bank 15,000 shares of the capital stock of the Standard Oil Company of New Jersey, certain stock of 960 Fifth Avenue Corporation, and a bill of sale of certain personal property, intending that all should be held by the bank as collateral for the loan of $300,000. The 15,000 shares of stock of the Standard Oil Company of New Jersey were not treated by the bank as collateral for the loan. Ten thousand of the shares were retained in the physical custody of the bank, but the bank purport-

ed to hold them as collateral for a loan made to·a corporation beneficially owned by J. W. Harriman. Five thousand were delivered to G. M.–P. Murphy & Co. as collateral to secure a personal brokerage account of the defendant Joseph W. Harriman, and, when Mr. Harriman's account with G. M.–P. Murphy & Co. was transferred to E. B. Smith & Co., were transferred to the latter.

The plaintiff did not discover what had been done with the 15,000 shares of Standard Oil Company of New Jersey stock until December 2, 1932, at which time 10,000 shares were still in the custody of the bank and 5,000 were in the custody of E. B. Smith & Co. On March 3, 1933, the latter sold 3,840 of the 5,000 shares, liquidating the debit balance in Joseph W. Harriman's personal brokerage account, and on or about March 3, 1933, E. B. Smith & Co., with the prior consent of the bank, delivered the remaining 1,160 shares and $38.60 in cash to the plaintiff, who accepted the same.

Since April 26, 1932, there have been a number of dividends on the stock of Standard Oil Company of New Jersey, including one dividend in stock of the Mission Corporation.

The plaintiff having brought this action against the defendants above named, the court has found that the 15,000 shares of stock of the Standard Oil Company of New Jersey were obtained by the fraud of the defendant Joseph W. Harriman; that such fraud is imputable to the defendant bank; that the plaintiff is entitled to a rescission of the loan agreement of April 26, 1932, and to the return of the 10,000 shares of stock of the Standard Oil Company of New Jersey, of the stock of 960 Fifth Avenue Corporation, and of the personal property, all of which are still in the possession of the bank; but that, as a condition, the plaintiff must pay to the defendant Frederick V. Goess, as receiver of the bank: "* * * The amount of said loan of $300,000 with interest thereon, less any and all dividends by way of cash or stock, which have been received by or for the account of defendant Goess as Receiver of defendant Bank, or defendant Bank, or defendant Joseph W. Harriman, in connection with any of said 15,000 shares of Standard Oil stock, and less the amount of such damages as is found that the plaintiff has suffered, by reason of the fraud perpetrated on him, as shown by the record herein."

The undersigned was appointed special master pursuant to the interlocutory decree, and an order amending the decree, "* * * to take the testimony and evidence as to the amount of the damages suffered by plaintiff by reason of the fraud perpetrated on him, as shown by the record herein, and to make all needed computations as to the amount of such damages and fully to hear the facts in respect thereto, and to report to the Court his findings of fact and conclusions of law, together with the evidence, for the advisement of the Court."

The complaint was dismissed as against the defendant Austin. The plaintiff was awarded judgment against three defendants; the bank, the receiver of the bank, and Harriman. There is no difference which is material here between the positions of those three defendants.

Notice of a hearing before the special master to be held on July 19, 1935, was duly given to all of the parties. At the hearing only the plaintiff and the defendants bank and Frederick V. Goess, as receiver, were represented. Voluminous briefs and reply briefs were submitted on behalf of the parties attending at the hearing, and the questions at issue were argued orally on August 5, 1935.

It appeared from the briefs and argument that there were three major issues on which the positions of the parties represented at the hearing were irreconcilable: (1) What amount should be awarded or credited to the plaintiff on account of the 3,840 shares of stock of Standard Oil Company of New Jersey which have not been, and are not to be, returned to the plaintiff; (2) whether any amount should be awarded to the plaintiff on account of the 1,160 shares of stock of the Standard Oil Company of New Jersey which were returned to the plaintiff on or about March 3, 1933; and (3) whether interest should be allowed to the plaintiff after March 3, 1933, the date of the closing of the bank, on the deductions to be made from the amount payable by him, which amount, by the terms of the interlocutory decree itself, bears interest.

It also appeared that there was a large number of other items requiring consideration before the net amount payable by the plaintiff as a condition precedent to the return of the stock and other property referred to in the interlocutory decree could be determined. These other items included: (1) Deposits by the plaintiff in his deposit account; (2) a withdrawal from the

deposit account; (3) dividends paid on the Standard Oil stock prior to March 3, 1933; (4) various interest charges and credits prior to March 3, 1933; and (5) a dividend on the stock of the Standard Oil Company of New Jersey paid in 1935 in stock of the Mission Corporation. As to all of these items, with the exception of the stock of the Mission Corporation (as to which it was agreed that the decree should provide that the Mission Corporation stock received on account of the 10,000 shares of stock of the Standard Oil Company of New Jersey should be returned to the plaintiff with the latter), the parties disagreed as to the proper method of treatment thereof. A considerable part of the voluminous briefs and reply briefs originally submitted dealt with these items, but an analysis of them warranted two conclusions: First, that it would make little difference in dollars and cents whether all of the theories advanced by one of the parties or all those advanced by the other were adopted; and, second, that the principal reason for the disagreements was the desire of counsel to treat these minor items in a manner believed by them to be consistent with the theories advanced by them with respect to the major items, which do involve substantial amounts.

It also developed that there was a substantial difference of opinion as to the scope of the matters with regard to which the special master could take testimony and report, in view of the question whether the word "damages" in the interlocutory decree covered some of the miscellaneous items referred to above.

The master therefore asked counsel to attempt to agree upon the method in which the minor items should be treated in the decree, leaving for his consideration only the three major issues referred to above. After a number of conferences a stipulation dated September 12, 1935, was signed by counsel represented at the hearing, and is filed with the master's report. At the conclusion of this memorandum the master will summarize the provisions of the interlocutory decree, the stipulation of September 12, 1935, and the master's report. The three major issues will first be disposed of:

(1) The award to be made to the plaintiff in respect of the 3,840 shares of stock of the Standard Oil Company of New Jersey.

The plaintiff's demand for a judgment in his original complaint, on which the defendant has placed particular emphasis, reads in part as follows:

"1. That said loan and agreement between the defendant Bank and the plaintiff, and any and all papers, instruments, and agreements executed in connection therewith be rescinded and in all respects annulled, cancelled, and set aside.

"2. That upon the payment by the plaintiff to the defendant Bank of said sum of $300,000, with interest, the defendants deliver to the plaintiff said note for $300,000. executed about October 26, 1932, certificates covering said 15,000 shares of the common stock of the Standard Oil Company of New Jersey, certificates covering said 4500 shares of 960 Fifth Avenue Corporation, and said bill of sale of contents of the apartment at 960 Fifth Avenue, and all other papers and documents executed by the plaintiff in connection with said loan.

"3. In the event that the defendants shall have parted with possession of said securities of the plaintiff, or in the event, for any reason, it is impossible to return them to the plaintiff, that the defendants return to the plaintiff the identical monies received by them for said securities or that the plaintiff have judgment against the defendants and each of them for the value of the securities not returned, together with any and all dividends, profits, and income received by the defendants or any of them, in connection with said securities.

"4. Pending the termination of this action, the defendants be restrained and enjoined from selling, assigning, delivering, hypothecating or otherwise encumbering or disposing of said 15,000 shares of the stock of the Standard Oil Company of New Jersey, the 4500 shares of the stock of 960 Fifth Avenue Corporation, and the contents of plaintiff's apartment."

In his amended complaint, the paragraph of his demand for judgment relating to the 3,840 shares read as follows: "2. That upon the payment by the plaintiff to the defendant Bank of said sum of $300,000 with interest, the defendants deliver or cause to be delivered to the plaintiff said note for $300,000 executed about October 26, 1932, certificates covering said 10,000 shares of the common stock of the Standard Oil Company of New Jersey, now in the Bank's possession, certificates covering said 4500 shares of 960 Fifth Avenue Corporation,

and said bill of sale of contents of the apartment at 960 Fifth Avenue, and all other papers and documents executed by the plaintiff in connection with said loan; that the defendants further deliver to the plaintiff a certificate or certificates for an additional 3840 shares of the Standard Oil Company of New Jersey stock, or pay to the plaintiff the value thereof assessed as of a date determined by the usual principles of law; that defendants further pay to the plaintiff any and all dividends, profits, and income received by the defendants or any of them, in connection with said securities."

In his second amended complaint, the paragraph read as follows: "2. That upon the payment by the plaintiff to the defendant Bank of said sum of $300,000 with interest, the defendants deliver or cause to be delivered to the plaintiff said certificates covering 10,000 shares of the stock of said Standard Oil Co. of New Jersey, and said 4500 shares of stock of the 960 Fifth Avenue Corporation, said bill of sale of contents of the apartment at 960 Fifth Avenue, said note of plaintiff for $300,000 executed in or about October, 1932, and said blank power of attorney, and further pay to the plaintiff such damages as he may be entitled to recover (less $38.60) by reason of said misappropriation of said 3840 shares of the stock of said Standard Oil Co. of New Jersey and by reason of the loss of any dividends or income which plaintiff may have suffered through said use by defendants of said 15,000 shares of the stock of the Standard Oil Co. of New Jersey or any part thereof."

In his third supplemental and amended complaint, on which the plaintiff went to trial, the paragraph was not changed in any respect material here.

At the hearing before the master on July 19, 1935, and in his brief and reply brief, the plaintiff's claim was based on the theory that he was entitled to damages for the conversion of the 3,840 shares; that the measure of his damages was the highest market value within a reasonable time after December 2, 1932, on which day he received notice of the conversion; that the highest market price within a reasonable time after December 2, 1932, was the price of 31⅞ per share, reached on December 12, 1932; and that his damages were therefore the sum of $122,400.

 There is no serious question that, if this measure of damages be correct, the amount of the damages has been correctly calculated by the plaintiff. Under the decision of the Circuit Court of Appeals in this circuit in Re Salmon Weed & Co., 53 F.(2d) 335, 79 A.L.R. 379, the measure of damages is the market price at the time of the actual conversion or the highest price within a reasonable time after notice has been received of the conversion, whichever of the two prices be the higher. In applying this rule in this case, it is unnecessary to determine the date of the initial conversion; it is conceded that the stock was converted not later than June 7, 1932, and on none of the different days on which it might conceivably be found that the stock was originally converted was the market price as high as it was on December 12, 1932. Nor is there any doubt that the period of 10 days elapsing between December 2 and December 12, 1932, was within the limits of a reasonable time. Burhorn v. Lockwood, 71 App.Div. 301, 75 N.Y.S. 828; Barber v. Ellingwood, 135 App.Div. 549, 120 N.Y.S. 947.

It might be stated parenthetically that, relying on Galigher v. Jones, 129 U.S. 193, 9 S.Ct. 335, 32 L.Ed. 658, the plaintiff first claimed that he was entitled to the highest price during the entire period between the date of the conversion and the expiration of a reasonable time after receipt of notice of the conversion, and that on September 6 and 8, 1932, the stock reached a high of 37⅜. However, the Circuit Court of Appeals, on rehearing, in Re Salmon Weed & Co., 53 F.(2d) at pages 340–342, 79 A.L.R. 379, expressly rejected such a construction of Galigher v. Jones, allowing only the "market value [of the stock] at time of unauthorized hypothecation or highest intermediate value [of the stock] between notice of conversion and reasonable time thereafter, whichever may be higher."

The position most frequently stated by the defendant was that the plaintiff was entitled only to the highest price of the stock on March 2, 1933, which is the day on which the defendant claimed that the stock was sold by E. B. Smith & Co. The highest price of the stock on that day was stated by the defendant to have been 23, making a total of $88,320, which is the amount the defendant was willing in its original brief to credit to the plaintiff.

However, Exhibit 59, which contains a list of high and low prices, shows that the high price on March 2, 1933, was 23½. Moreover, the testimony is, and I find, that the stock was sold on March 3, 1933, not

March 2, 1933 (minutes, p. 977). The highest price on March 3, 1933, was 24⅝.

The 3,840 shares were actually sold by E. B. Smith & Co. at prices ranging from 22¾ to 23½, and realized a total of $87,-916.10. Exhibit AA. And this latter figure was suggested as the proper award in the defendant's final brief.

■ The defendant's principal contentions were based on the proposition that, from the time when the plaintiff first received notice that the bank no longer held the 3,840 shares until after E. B. Smith & Co. had sold the shares on March 3, 1933, the plaintiff consistently maintained a demand for the return of the specific shares, and that thereafter he changed his demand to one for damages for conversion. The defendant further contended that the plaintiff's demand had the effect of preventing the sale of the stock by E. B. Smith & Co., who in fact did first sell out of the Joseph W. Harriman account other stock with respect to which there was no adverse claim before selling any stock which the plaintiff claimed to own. The defendant urged that the plaintiff was estopped from claiming a conversion as of any date earlier than March 3, 1933.

I do not find that the plaintiff can in any sense be said to have prevented E. B. Smith & Co. from selling the stock. At all times after August 1, 1932, the bank was the beneficial owner of the account in which the stock was held, for on August 1, 1932, Harriman had assigned that account to the bank. Defendant's Exhibit CC. E. B. Smith & Co. knew at all times after November 25, 1932, that instructions with respect to the account would be given by Henry E. Cooper, president of the bank. Exhibits M2, Q, R, S, and T. Margin calls were sent to Mr. Cooper between December 2, 1932, and March 3, 1933, and were unanswered. With a declining market, and in response to the margin calls, the bank at no time directed E. B. Smith & Co. to sell the Standard Oil Company stock rather than the other stock in the account. There is no doubt that the demand made by the plaintiff had an influence, and perhaps a decisive influence, in causing E. B. Smith & Co. to sell the other stock before selling the Standard Oil stock, but only because of the inactivity of the bank and its failure to give instructions. The real question is not whether E. B. Smith & Co. was prevented from selling the stock, but whether the bank was. I do not think that the bank can now assert that it was prevented from doing something which it never tried to do.

However, even if the defendant's contention on this point were substantiated by the facts, it would, in my opinion, be immaterial. Of course, the demand for the return of the stock was in the nature of an election by the plaintiff, and undoubtedly did have certain legal consequences. If the defendant had objected later that the demand could not be changed, and had been ready and willing to return the stock, a different question would be presented here. But the defendant has never made such an objection, for the obvious reason that, had it done so, it would have been subjected to a greater liability than the amount of damages claimed by the plaintiff for conversion. The contention that the bank was prevented from selling the 3,840 shares would be material if the bank were objecting to any change by the plaintiff from his original position; it is not material when the bank has not objected, and does not now object, to the change. The real question is what effect the change had.

The plaintiff did consistently maintain a demand for the return of the 3,840 shares until after they had been sold by E. B. Smith & Co. on March 3, 1933. This demand is fairly to be inferred from the parts of the original complaint quoted above. The demand was also repeated and maintained by the plaintiff's counsel throughout the period in question.

Subsequent to the sale of the stock on March 3, 1933, the plaintiff changed his demand and asked for damages for the conversion of the 3,840 shares. This appears from the prayer for relief in the second amended complaint quoted above, which was served on May 4, 1933, and from the third supplemental and amended complaint, on which the plaintiff went to trial.

■ Before considering the question what effect the plaintiff's change of demand had, it is appropriate first to dispose of the defendant's contention, which was not emphasized, if made at all, until the defendant's fourth and final brief was served, that the plaintiff should be limited to the $87,-916.10 received by E. B. Smith & Co. on the sale of the 3,840 shares on March 3, 1933. This contention is based upon the plaintiff's demand in paragraph 3 of the prayer for relief in his original complaint quoted above, and emphasizes the alternative prayer for "the identical monies re-

ceived by them for said securities." In my opinion, the defendant's contention on this point cannot be sustained for the following reasons:

First, because the plaintiff did not go to trial on the original complaint; second, because the alternative prayer for "the identical monies received by them for said securities" cannot fairly be separated from the balance of the prayer for relief, or fairly construed to limit the plaintiff's claim to such amount as might be realized in the event of a future sale at a time which the plaintiff was not privileged to select; and, third, because the defendant never received, and is not now in a position to deliver, any "identical monies"; the proceeds of the sale having been received and retained by E. B. Smith & Co.

In considering the principal question as to the effect of the plaintiff's change from a demand for a return of the 3,840 shares or their value at the time of the trial to a demand for damages for their conversion, it is proper to point out that the plaintiff's demands with respect to the other items involved in the case have not been changed, but are still analogous to demands which would have been proper in an action for replevin. This situation, while perhaps anomalous, does not alter the fact that the plaintiff did change his demand with respect to the 3,840 shares.

A consideration of the effect of the change in the plaintiff's demand requires a brief statement of the rules which appear to be applicable.

When the original complaint was served in December, 1932, the defendant had already parted with possession of the 3,840 shares. This did not, however, preclude the maintenance by the plaintiff of an action in replevin, or an action in equity for similar relief, as the defendant had parted with possession of the stock wrongfully. Nichols v. Michael, 23 N.Y. 264, 80 Am.Dec. 259; Sinnott v. Feiock, 165 N.Y. 444, 59 N.E. 265, 53 L.R.A. 565, 80 Am.St. Rep. 736; Duboff v. Haslan, 195 App.Div. 117, 121, 122, 186 N.Y.S. 481; Ford Garage Co., Inc., v. Brown, 198 App.Div. 467, 191 N.Y.S. 539.

If in an action in equity demands for relief be made analogous to those in an action for replevin, in my opinion the assertion of such demands should have consequences similar to those which would attend the commencement of such an action at law. It was argued before me that re-

plevin is a statutory action, and that a court of equity can take no cognizance of its remedies. But the action lay at common law, and has not been changed by statute in any respect which is relevant to the issues here. No logical reason is suggested why the assertion in an equity action of a demand appropriate to a replevin action should not have the same consequences as the commencement of a replevin action.

In replevin, the plaintiff demands a return of the personal property unlawfully taken, or, in the alternative, its value. The value allowed is that at the time of the trial. New York Guaranty & Indemnity Co. v. Flynn, 55 N.Y. 653; Gilroy v. Everson-Hickok Co., 103 App.Div. 574, 93 N.Y. S. 132; N. Y. Yellow Cab Co. v. Courtlandt Garage & Realty Corporation, 223 App.Div. 44, 227 N.Y.S. 315. It is not optional with the plaintiff whether to take the property or its value as fixed at the trial. If the defendant has the property and returns it pursuant to the judgment, the plaintiff must take it. Civil Practice Act, § 1124; Dwight v. Enos, 9 N.Y. 470; Fitzhugh v. Wiman, 9 N.Y. 559; Allen v. Fox, 51 N.Y. 562, 10 Am.Rep. 641; Retter v. Webber, 217 App.Div. 193, 216 N.Y.S. 500. And, although no decision on the point has been cited, I should assume that, if a judgment were for the return of shares of stock, it could be satisfied by a good delivery of a certificate or certificates for the specified number of shares, even though the certificate or certificates delivered were not the certificate or certificates originally taken. Cf. Govin v. De Miranda, 140 N.Y. 474, 35 N.E. 626.

It follows that the plaintiff could have adhered to his original demand for the return of the 3,840 shares of stock of Standard Oil Company of New Jersey. And the defendant could have provided for its ultimate liability by having 3,840 shares of the stock ready for delivery after judgment was entered against it.

During the course of the action, however, the plaintiff changed his demand to one for conversion. A demand in an action for conversion is for damages, which are measured as set forth above in the summary of the plaintiff's position.

The difference between an action in replevin and one for conversion is fundamental. In the former the plaintiff elects to have his property back; in the case of stock, he remains "long" of the stock, and, if he succeeds in his action, he will receive

either the stock itself or an amount of money which would be sufficient at the time of the trial to enable him to buy the stock; and the defendant can provide for his ultimate liability by holding the amount of stock in question. On the other hand, in an action for conversion a plaintiff makes "a kind of forced sale," as the court said in Allen v. Fox, 51 N.Y. 562, 564, 10 Am.Rep. 641. If, despite his "forced sale," the plaintiff wishes to remain "long" of the stock, he can buy it in the market within a reasonable time after notice of conversion, and the amount of damages which he will recover will reimburse him for the cost of his stock. And the defendant can provide for his ultimate liability by setting aside the amount of damages payable.

It may be noted that for some years in New York a plaintiff could recover in conversion damages measured by the highest market value between the date of the conversion and the trial. Markham v. Jaudon, 41 N.Y. 235. But this rule was changed in Baker v. Drake, 53 N.Y. 211, 13 Am.Rep. 507, and it is now as stated by the Circuit Court of Appeals in Re Salmon Weed & Co., 53 F.(2d) 335, 79 A.L.R. 379. The effect of the rule originally established in Markham v. Jaudon was, of course, to give the plaintiff the benefit of assuming that he would have held the stock until it reached the highest price during the entire period between the conversion and the trial, and that he would have sold the stock at the exact moment when that highest price was reached. Conversely, the risk of all market fluctuations was thrown on the defendant, and the latter was prevented from providing for his ultimate liability by either holding stock or setting aside money for that purpose. The change in the rule effected by Baker v. Drake, however, so limited the defendant's liability that after the expiration of a reasonable time following notice to the plaintiff of the conversion, the defendant could, theoretically at least, calculate his ultimate liability; and the defendant was, actually as well as theoretically, relieved of all market risks after that time.

■ It is obviously a matter of practical, as well as theoretical, importance whether a plaintiff sues in replevin or conversion, or attempts to change from one to the other. If a plaintiff can sue in replevin, and then sue in conversion, and then sue in replevin again, he can substantially reinstate the discarded rule of Markham v. Jaudon, and throw all the risk of market fluctuations on the defendant, who could never set a limit upon, or make provisions to meet, his ultimate liability.

It would appear to follow, and the defendant has contended, that a plaintiff who has elected to sue in replevin is bound by his election and cannot thereafter sue for conversion, and that once he has elected to sue for conversion he cannot thereafter sue in replevin. The defendant has cited Frost v. Warren, 42 N.Y. 204; Rodermund v. Clark, 46 N.Y. 354; Commerce Exchange Nat. Bank v. Blye, 123 N.Y. 132, 25 N.E. 208; Deitz v. Field, 10 App.Div. 425, 41 N.Y.S. 1087, and National Surety Co. v. Odle (Tex.Civ.App.) 40 S.W.(2d) 876, in support of this contention. While none of these cases seems to me quite as conclusive as the defendant regards them, and Copeland v. Hugo, 221 App.Div. 779, 223 N.Y. S. 642, might be cited as authority for an opposite conclusion, I am satisfied that, subject to certain limitations which are not material here, a plaintiff may not change the theory of his cause of action from replevin to conversion or vice versa, if a defendant objects seasonably.

It is unnecessary to determine here just what limitations there may be on the rule that such changes may not be made. Schenck v. State Line Telephone Co., 238 N.Y. 308, 144 N.E. 592, 35 A.L.R. 1149, indicates the nature of one kind of limitation which the law may impose, and there are no doubt others. It is also, I think, unnecessary to decide the effect of a seasonable objection to a change, if attempted. All that need be determined here is the effect of what the plaintiff did in this case.

■ It seems obvious to me that the plaintiff's change, to which the defendant made no objection, cannot be regarded as a nullity. The plaintiff actually went to trial on his third supplemental and amended complaint, in which the change, previously made, was adopted. If it were the rule that a plaintiff could not effect any change as between the two remedies in question, and that any attempt to effect a change is a nullity, the logical consequence would be an award to the plaintiff of the market value of the 3,840 shares of stock at the time of the trial, which was considerably in excess of the $122,400 demanded by the plaintiff as damages for conversion. The trial before the court took place from May 21, 1935, on which day the stock fluctuated between 47 and 47¾, to June 4, 1935, on

which day the stock fluctuated between 47 and 48¾; the low price during the trial was 45 and the high 50½. If the hearings before the special master be included as part of the trial, and the prices at the time of those hearings be included, the result is the same.

It seems to me that the maximum effect which can equitably be given to the plaintiff's change in theory is to limit the amount of his recovery to either (1) the $122,400 claimed by him, which would be the amount allowable to him if he had originally made a claim in conversion, or (2) the amount which would be allowable to him if there had been a conversion on the day when he first asserted his claim in conversion. Whether the latter amount might be the proper one to allow rather than the former (which I doubt), it is unnecessary to decide, for I find that the plaintiff did not change his theory until the service of the second amended complaint on May 4, 1933, and on that day the highest price of the stock was 34½.

The defendant contends that the change was made in the amended complaint, but the prayer in that complaint was that the defendant "deliver to the plaintiff a certificate or certificates for an additional 3,840 shares of the Standard Oil Company of New Jersey stock, or pay to the plaintiff the value thereof assessed as of a date determined by the usual principles of law." This demand, in my opinion, was plainly analogous to a demand in a replevin action, and does not sound in conversion, though possibly somewhat equivocal as to the date for assessing the value of the stock.

The defendant's other contentions are ingenious. They are, in substance, that during the period prior to the sale of the 3,840 shares by E. B. Smith & Co. the plaintiff waived pro tempore any claim for conversion of the 3,840 shares by maintaining a demand for the return of the shares, and that, when the plaintiff thereafter changed his demand to one for conversion, the plaintiff in effect predicated his claim for conversion on the sale by E. B. Smith & Co. rather than upon the original conversion by the defendant. This statement of the defendant's contentions, I believe, presents them in the light most favorable to the defendant. At times the defendant appeared to be contending that the plaintiff's change of position took place at the time of the sale by E. B. Smith & Co.; but I find no evidence to sustain such a contention.

Neither, however, do I find anything in the pleadings which would support a holding that when the plaintiff asked for damages "by reason of said misappropriation of said 3,840 shares of the stock of Standard Oil Company of New Jersey" he was referring to the sale of the stock by E. B. Smith & Co. rather than to the original misappropriation by the defendant. It may be true that the sale by E. B. Smith & Co. was the factor which induced the change in the plaintiff's position; it is also true that the second and third amended complaints alleged the sale by E. B. Smith & Co.; but a fair construction of the pleadings is that the plaintiff was referring to the original misappropriation which was specifically referred to in the allegations of all his complaints.

The defendant does not seek to have the plaintiff's change to a demand for damages for conversion barred. Instead, the defendant attempts, in effect, to make the change a different one from that intended by the plaintiff. The change actually intended by the plaintiff has reduced the defendant's liability, as events have transpired. The defendant must either accept the change actually made or object to it. Since for obvious reasons the defendant does not object to the change actually intended, it must be deemed to have accepted it.

It would follow from the foregoing that the plaintiff would be entitled to have an offset of the $122,400 claimed by him against the amount payable by him as a condition precedent to the return of the 10,000 shares and other property which is to be returned pursuant to the decree.

One other question remains, however, to be considered.

After, and apparently as a result of, the various contentions made by the defendant, the plaintiff ultimately concluded to ask the master to award him the market value of the 3,840 shares at the time of the trial. He did not conclude to make this demand until after the initial hearing had been closed and briefs, reply briefs, and the defendant's supplemental brief had been served. At the plaintiff's request a further hearing was held on September 12, 1935, at which evidence as to the market value at the time of the trial was admitted, over the defendant's objection, in order to have a complete record. If this demand were to be allowed, the plaintiff would be entitled to a credit of something between

$177,360 and $192,000, as against the $122,400 which he asked initially and the amount, approximately $88,000, which the defendant is apparently willing to allow him.

In my opinion it would be improper for the master to entertain the plaintiff's demand for an award for the value of the stock at the time of the trial. The plaintiff went to trial and obtained the interlocutory decree on his third supplemental and amended complaint, in which he asked for damages "by reason of said misappropriation of said 3,840 shares of the stock of said Standard Oil Company of New Jersey." The interlocutory decree itself speaks of "damages," and while perhaps the use of the word would not be conclusive in view of the rest of the context, in my opinion the interlocutory decree must be read, in the light of the third amended and supplemental complaint, as authorizing an award for damages for the conversion of the 3,840 shares. The plaintiff has never moved for leave to amend his third amended and supplemental complaint, and I do not suppose that such a motion could be entertained by the special master.

Furthermore, however reluctant the court, or the special master sitting on behalf of the court, may be to limit the relief available to litigants, the fact that the plaintiff maintained an identical demand for more than two years and did not increase it until after the conclusion of the trial and of the hearings before the master, must have some significance.

To summarize, I hold that the plaintiff initially made a demand for the return of the 3,840 shares or their value at the time of the trial; that he did not change that demand until the service of his second amended and supplemental complaint on May 4, 1933; that he then changed it to a demand for conversion, referring to the initial conversion by the bank which was discovered by the plaintiff on December 2, 1932; that the effect of his change, as events have transpired, was merely to reduce the amount to which he might otherwise have been entitled; that no objection to the change has been made, or can now be made, by the defendant, as it has not been injured thereby; but that the plaintiff cannot now revert to his initial demand. The plaintiff is therefore entitled to a credit of $122,400 in respect of the 3,840 shares. While not exactly in point, it seems to me that McLain v. Mathushek Piano Mfg. Co., 54 App.Div. 126, 66 N.Y.S. 397, and Hitchcock v. Wimpleberg, 103 App.Div. 53, 92 N.Y.S. 997, sustain these conclusions.

2. Plaintiff's claim with respect to the depreciation in value of the 1,160 shares of stock of the Standard Oil Company of New Jersey which were returned to him.

In the schedule of his claims for damages attached to his reply brief, the plaintiff set forth a claim as follows:

"For conversion of 1160 shares, later returned to plaintiff on March 3, 1933 Highest intermediate value as above 31⅞ Value on March 3, 1933 24⅝

1160 shares at 7¼ 8,410.00"

In my opinion no award for damages, which could properly be characterized as damages for "conversion," can be made with respect to the 1,160 shares. The plaintiff has at no time asked any relief, sounding in conversion, with respect to those shares. The demand in his original complaint was for the shares themselves or their value; a typical replevin demand. In his amended complaint he made no demand for any relief of any kind with respect to the 1,160 shares which had been returned to him on March 3, 1933. In his second and third amended complaints his prayer with respect to the 1,160 shares was limited to a demand for damages suffered by reason of the loss of dividends or income on the 1,160 shares.

The question remains whether, if the plaintiff's action be treated as analogous to an action for replevin, he was entitled to the return of the 1,160 shares plus an amount equivalent to the depreciation between December 12, 1932, and the date of the return of the shares, March 3, 1933. Commerce Exchange Nat. Bank v. Blye, 123 N.Y. 132, 25 N.E. 208, and Harding v. Gaillard, 176 App.Div. 833, 163 N.Y.S. 617, seem to support the view that in a replevin action depreciation in the value of securities between the unlawful taking and the trial can be recovered, although in the former case the plaintiff recovered nothing and in the latter case the court seems to have relied principally on Boomer v. Flagler, 51 N.Y.Super.Ct. (19 J. & S.) 211, which was a conversion case. Section 1118 of the Civil Practice Act provides for the recov-

cry of depreciation in value in an action in replevin; but it is not clear under what circumstances, and with respect to what articles, depreciation in value can be recovered. No case has been cited in which an award was made in a replevin action for depreciation in value between the unlawful taking and the trial in a case involving stocks or bonds. To allow the plaintiff to recover a stock and any depreciation between the unlawful taking and the return of the stock would appear to give him almost as unfair an advantage as resulted from the rule in conversion cases established in Markham v. Jaudon, supra, and modified in Baker v. Drake, supra. If depreciation in value can be recovered and no allowance is made for appreciation, it means that the plaintiff whose securities have been unlawfully taken remains "long" of the securities until the time of the trial with an absolute guarantee against any losses from market fluctuations. Conversely, the defendant takes the risk of all market fluctuations and cannot provide for his ultimate liability because the amount thereof will depend upon fluctuations over a considerable period of time.

In any event, there is no claim here for depreciation between the time of the unlawful taking and the trial. The stock was far more valuable at the time of the trial than at any time in 1932. None of the cases cited goes so far as to intimate that, if in a replevin action, or in an equity action asking for analogous relief, securities unlawfully taken are returned, and their return is accepted, there can be a recovery for depreciation in value at the time of the return if at the time of the trial there is no depreciation.

However, I do not think it is necessary to decide whether any depreciation in the value of the 1,160 shares between December 12, 1932, and March 3, 1933, should be allowed, because I do not find that the plaintiff ever properly demanded it in his pleadings. The only parts of his prayers for relief in his third supplemental and amended complaint, upon which he went to trial, requiring consideration in this connection are the prayers for: (1) "Such damages as he may be entitled to recover * * * by reason of the loss of any dividends or income which plaintiff may have suffered through said use by defendants of said 15,000 shares of the stock of Standard Oil Company of New Jersey or any part thereof"; and (2) that "plaintiff have such

other and further relief as in the premises may to this court seem just and proper." Prior to the service of the third amended and supplemental complaint, the plaintiff had accepted the return of the 1,160 shares without any express reservation of any claims relating thereto. In my opinion the plaintiff's pleadings cannot be fairly construed to set forth any demand relating to depreciation in value of the 1,160 shares, which were at the time of the trial worth far more than at the time when they were unlawfully taken.

3. Interest on the credits allowed the plaintiff.

As already stated, the interlocutory decree provides that the plaintiff must pay the defendant "$300,000 with interest thereon," less the items specified therein with respect to which he is entitled to credits. It was agreed by the parties that the order of reference did not refer to the master the question as to the rate of interest to be charged against the plaintiff.

It was also agreed, however, that the master should decide whether the plaintiff should be allowed interest after March 3, 1933, the date of the closing of the bank, on the credits awarded to him, or whether the amount of such credits should be so applied against the loan as to reduce the amount of interest chargeable against the plaintiff. The credits in question consist of (1) the amount specified in the stipulation of September 12, 1935, covering various miscellaneous items as of March 3, 1933; (2) the amount awarded the plaintiff with respect to the 3,840 shares; and (3) the amount of all dividends received since March 3, 1933, by the defendant on the 10,000 shares of stock of the Standard Oil Company of New Jersey which are to be returned to the plaintiff.

The defendant contended that the amounts to be credited to the plaintiff should be treated as a separate account or accounts, and that, while interest should be charged to the plaintiff on the entire $300,000 after March 3, 1933, no interest should be charged against the defendant on the credits, as an allowance of interest to the plaintiff with respect to these items would violate the mandate of "ratable dividend" contained in the National Bank Act (Title 12, U.S.C.A. § 194).

The plaintiff contended that the amount of the credits to be allowed to him should be calculated as of March 3, 1933, and that

either (1) a balance should be struck as of that date, or (2) that credits should bear interest after March 3, 1933. If a balance is struck on March 3, 1933, by applying the credits against the principal of the loan, the result is the same as if interest is allowed separately on the credits. However, if the balance is struck by applying the credits first against the interest accrued to March 3, 1933, and then against principal, the net amount on which the plaintiff would be charged with interest after March 3, 1933, would be about $15,000 more.

In my opinion the defendant's contention is plainly untenable. The mandate of the National Bank Act is that there be a "ratable dividend." The plaintiff is not asking for any "dividend" out of the defendant's estate. Scott v. Armstrong, 146 U.S. 499, 510, 13 S.Ct. 148, 36 L.Ed. 1059. As a condition precedent to the return of property which the court has decreed belongs to him, he is being called upon to pay the net amount which he owes to the bank, which is to be calculated by deducting valid offsets from the amount which the Bank claims.

Whether the credits should be applied on March 3, 1933 (1), first against accrued interest on the $300,000 loan and the balance against principal, or (2) directly against principal, has not been argued before me. If the credits were to be treated as if they had been payments voluntarily made, they would be credited against the interest accrued on March 3, 1933, until that was paid, and the balance would be credited against principal. Shepard v. City of New York, 216 N.Y. 251, 110 N.E. 435, Ann.Cas.1917C, 1062. But the credits do not represent voluntary payments. On the whole, it seems to me that it is equitable to credit the items directly against the principal of the $300,000 as of March 3, 1933.

To facilitate an understanding of the effect of the report, I will summarize the interlocutory decree, the stipulation of September 12, 1935, and the report. Before doing so, it is proper to make an additional finding.

It is undisputed that the decree should provide that the plaintiff is entitled to be credited with the cash dividends paid on the 10,000 shares of Standard Oil Company of New Jersey stock after March 3, 1933, and that those dividends to date have been as follows:

| | |
|---|---|
| March 15, 1933 | $2,500 |
| June 15, 1933 | 5,000 |
| December 15, 1933 | 4,750 |
| June 15, 1934 | 5,000 |
| December 15, 1934 | 7,500 |
| June 15, 1935 | 5,000 |
| Total | $29,750 |

Under the terms of the interlocutory decree, the plaintiff is also entitled to dividends on the 1160 shares as follows: March 15, 1933, $290.

If the master's report be confirmed, the plaintiff will receive the items of property specified in subdivisions (a), (b), (c), and (d) of paragraph 3 of the interlocutory decree, and 533²⁵⁄₇₅ shares of stock of the Mission Corporation, upon payment of $300,000 and interest, less the following: (1) The sum of $18,684, and interest from March 3, 1933, representing the items referred to in the stipulation of September 12, 1935; (2) the sum of $122,361.40, and interest, representing the damages in respect of the 3,840 shares, amounting to $122,400, less the $38.60 paid to the plaintiff by E. B. Smith & Co.; (3) all dividends paid on the 10,000 shares of stock of Standard Oil Company of New Jersey from March 3, 1933, to the date of the return of such stock, with interest thereon, such dividends to date being as specified above; (4) the dividend of $290 paid to E. B. Smith & Co. for the account of the bank on March 15, 1933, on the 1,160 shares of stock of Standard Oil Company of New Jersey which were returned to the plaintiff on March 3, 1933, with interest thereon.

The interest chargeable to the plaintiff will be calculated as follows: From April 26, 1932, to March 3, 1933, interest on $300,000; from March 3, 1933, to the date of payment, interest on $158,954.50 ($300,000, less the sums of $18,684 and $122,361.40).

Interest will be credited to the plaintiff on each of the dividend payments above mentioned, totaling $30,040, and any further payments received by the defendant on the 10,000 shares, from the date of payment.

II. Settle final decree on notice. Unless agreed, rate of interest to be allowed as against each party should be discussed with me before final decree is presented. Costs also to be taxed before that time.